# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

### SAVANNAH DIVISION

| | |
|---|---|
| BRENDAN NAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CV411-219 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| *Commissioner of the Social Security*, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Claimant Brendan Nay appeals the Social Security Commissioner's

denial of his application for disability insurance benefits. Doc. 1. He

traces his disability to his former employment with a concrete company,

where he twice injured his leg while on the job. Doc. 4-2 at 32-36, 37-38,

42-43.[1]   His application was denied administratively and by an

Administrative Law Judge (ALJ) following a hearing. Doc. 4-2 at 12-20,

26-63. The Appeals Council denied review of the ALJ's decision, doc. 4-2

---

[1]   The Court is using the pagination imprinted on the top of each page by its
electronic docketing software. Those numbers often do not match up with the printed
page numbers.

at 2-4, which thus became final.   The Court should **AFFIRM** the Commissioner's decision.

## I.    STANDARD OF REVIEW

Affirmance of an ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotes and cites omitted).  It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotes and cites omitted).

If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159.  This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).  Nor may it "reweigh the evidence or make new factual findings." *Brown v.*

*Commissioner of Soc. Sec.*, 459 F. App'x 845, 846 n. 1 (11th Cir. Feb. 29, 2012) (citing *Dyer*, 395 F.3d at 1210).

It is Nay's burden to prove disability.[2]   20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).   His case is threaded through the five-step evaluation process set forth in the Social Security Regulations.   20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).   At step one, he must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228.

At step two, he must demonstrate a severe impairment or combination of impairments.   *Id.*   Then, at step three, if his impairment meets or equals a listed impairment, he is automatically found disabled.   *Id.*   If not, he must advance to step four, which requires him to prove an inability to perform past relevant work.   *Id.* If he cannot do that past relevant work, step five shifts the burden to

---

[2]   "A person is disabled under the Social Security Act if they have the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months.' 42 U.S.C. § 423(d)(1)(A)." *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 869 (11th Cir. 2012).

the Commissioner, who must show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* This involves a Residual Functional Capacity (RFC) determination.[3] Once that is shown, the claimant must demonstrate that he does not retain the RFC to perform that other work based on his age, education, and experience. *Hughes v. Comm'r. of Soc. Sec. Admin.*, 2012 WL 3124866 at * 1 (11th Cir. Aug. 2, 2012).

## II.   ANALYSIS

### A.   The ALJ's Determination

Nay applied for benefits in August 2009, alleging that he became disabled on June 30, 2006. Doc. 4-2 at 12. His earnings record supported disability coverage only until December 31, 2008, known as the "date last

---

[3]   Actually, it is at both steps four and five that the ALJ must determine the claimant's RFC -- what he is still able to do despite his impairments -- and this is based on all relevant medical and other evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). This assessment can cover both exertional and nonexertional limitations. *Id.* at 1242-43. It is thus at the fifth step that the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, he can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"), or hear testimony from a vocational expert. *Id.* at 1239-40; *Pierce v. Astrue*, 2012 WL 3309717 at * 3 (S.D. Ala. Aug. 13, 2012).

insured" (DLI).[4]  Doc. 4-2 at 12.  He thus was required to show that he became disabled on or prior to December 31, 2008, that such disability was severe, and that it continued for at least 12 months.  *Id.*; *see also* 20 C.F.R. 404.101; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Pierce*, 2012 WL 3309717 at * 3 n. 2.

Nay testified before the ALJ and provided his past work history, plus a description of his daily activities.  Doc. 4-2 at 25-59.  Consulting a Vocational Expert (VE),[5] the ALJ found that Nay suffered from a severe impairment (left knee surgical residuals) and thus could not perform any past relevant work (primarily, that of a concrete truck driver).  Doc. 4-2 at 14.

---

[4]   That is the "date by which [his] disability must have commenced in order to receive benefits. . . ." *Howard v. Astrue*, 2012 WL 3290097 at * 1 (N.D. Fla. Jul. 16, 2012); *see also Hedden v. Astrue*, 2012 WL 2577516 at * 4 (N.D. Ala.  Jul. 2, 2012) ("The current regulations also require that Plaintiff must show that she became disabled prior to the expiration of her disability insured status and that the disability was severe for a continuous period of 12 months.").  The DLI thus impacts relevancy. *McCain v. Astrue*, 2012 WL 3503358 at * 6 (N.D. Ala. Aug. 10, 2012) ("However, Dr. Moon began treating McCain in November 2006, eight months after McCain's date last insured of March 31, 2006. Therefore, Dr. Moon's treatment notes are not helpful in determining disability during the relevant time period.") (cites omitted).

[5]  A VE "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240, quoted in *Waldrop v. Comm'r of Soc. Sec.*, 2010 WL 2017647 at * 4 (11th Cir. May 21, 2010).  "An ALJ may rely upon a [VE's] testimony as the basis for finding that a claimant has the ability to find work in the national economy." *Douglas v. Comm'r of Soc. Sec.*, 2012 WL 3205473 at * 1 (11th Cir. Aug. 7, 2012).

Nay thus made it to step five.  But based on the VE's opinion, the ALJ determined that Nay could perform some light work, so he denied the claim.  *Id.* at 19-20.  The ALJ supported that step five finding by, *inter alia*, rejecting the February 21, 2010-dated, "total disability" opinion of Nay's treating physician,[6] David M. Hunter, M.D.  He also disbelieved Nay's testimony that, while he could perform a range of daily activities, his knee pain variably struck him down for 24 hours at a time,

---

[6]   As a treating physician, Hunter's opinion

> is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *see* 20 C.F.R. § 404.1527(d)(2) (providing that, generally, more weight is given to opinions from treating sources). However, we have found "good cause" to afford less weight to a treating physician's opinion where the opinion is conclusory or inconsistent with the physician's own medical records or where the evidence supports a contrary finding. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).

*Simone v. Comm'r of Soc. Sec.*, 465 F. App'x 905, 910 (11th Cir. 2012) (quotes omitted); *accord Hughes*, 2012 WL 3124866 at * 2.  If the ALJ gives less than controlling weight to the opinion of a treating physician, he must give specific reasons, and failure to state those reasons is reversible error. *Lewis*, 125 F.3d at 1440. Hence, he must clearly articulate reasons showing "good cause" for discounting it. *Id.*

Good cause exists when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. *Phillips*, 357 F.3d at 1240–41. The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279–80 (11th Cir.1987); *Simone*, 465 F. App'x at 909-10 (treating physician's opinion properly rejected because, *inter alia*, physician provided no information about any clinical data or other objective medical evidence on which he based his opinion).

preventing him from reliably showing up for, and thus holding onto, even a light-duty job. Doc. 4-2 at 19-20.

**B. Nay's Claims**

Nay contends that the ALJ's decision is not supported by substantial evidence because he erred in evaluating Nay's credibility. Doc. 6 at 78; doc. 8 at 2-3. He also failed to give controlling weight to Dr. Hunter's opinion that, as of February 21, 2010, Nay was totally disabled. Doc. 8 at 5. Nay relies on that opinion to support his pain and incapability claims. Doc. 6 at 6-7, 8-10; doc. 8 at 1-3.

The focus of Nay's evidence was on his claimed knee pain. He is able, he concedes, to engage in certain daily activities cited by the ALJ as evidence that he can perform light duty work, but he claims that the residual pain caused by engaging in simple daily activities is often crippling afterwards, sometimes immobilizing him for as much as 24 hours at a time. Hence, he cannot function on a sustained basis. That prevents him from reliably showing up at a job. Doc. 6 at 7, 9. He cites the VE's testimony on this,[7] doc. 6 at 7, along with Dr. Hunter's

---

[7]   *See* doc. 4-2 at 55-57 (VE opined via hypothetical question that one in Nay's position could not perform past relevant work but could perform jobs like "counter clerk" or "dispatcher service"); *id.* at 58-59 (VE opines that, if he "is going to

statement. Doc. 6 at 6-7; doc. 8 at 1-2.   The ALJ, Nay thus concludes, erred.  Doc. 6 at 11-12; doc. 8 at 1-3.

Nay's argument must be assessed in light of the three-part pain standard.  Under it, Nay was required to show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), quoted in *Weekley v. Comm'r of Soc. Sec.*, 2012 WL 3264371 at * 3 (11th Cir. Aug. 13, 2012).  This Court can reverse the ALJ only if his decision contains no evidence showing the proper application of this three-part standard. *Weekley*, 2012 WL 3264371 at * 3 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  As for Nay's own testimony, the ALJ was supposed to consider:

> (1) [Nay's] daily activities; (2) the "duration, frequency, and intensity" of [Nay's] symptoms; (3) "[p]recipitating and aggravating factors;" (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms. 20 C.F.R. § 404.1529(c)(3).

---

unpredictably miss between 3 to 4 days of work each work month," he could *not* perform those jobs "outside of a sheltered workshop," i.e., within the "competitive employment" sector of the national economy); *see also* 3 Soc. Sec. Law & Prac. § 40:27 (Jun. 2012) (explaining how the "sheltered workshop" factor may be considered in disability determinations).

Additionally, the ALJ [could] consider the claimant's "appearance and demeanor during the hearing" as a basis of credibility, although it cannot impose his observations in lieu of a consideration of the objective medical evidence. *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). The ALJ is to consider these factors in light of the other evidence in the record. 20 C.F.R. § 404.1529(c)(4). If the ALJ discredits [Nay's] testimony as to [his] subjective symptoms, [he] "must clearly articulate explicit and adequate reasons for" doing so. *Dyer*, 395 F.3d at 1210 (internal quotation marks omitted). The ALJ must also show that [he] considered the claimant's medical condition as a whole. *Id.*

*Weekley*, 2012 WL 3264371 at * 3.  The ALJ was thus free to consider Nay's daily activities when determining whether his "testimony regarding symptoms such as pain is not credible, as well as whether medication helped [his] condition. *See* 20 C.F.R. § 404.1529(c)(3)(i),(iv)." *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012) (citing *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir.1987)).

The entire record, the ALJ concluded, shows that Nay's knee problems constituted no "severe impairment because the medical and other evidence establishes only a slight abnormality that would have had no more than a minimal effect on [Nay's] ability to work."  Doc. 4-2 at 15.  The ALJ noted, *inter alia*, that Dr. Hunter's February 2008 treatment notes showing that Nay "had a negative straight leg-raising test." *Id.*  Hence, Nay could not perform the full range of available light

work now available in the economy, but he *could* perform the specific jobs that the VE opined he could perform (i.e., mail clerk, counter clerk, dispatcher). Doc. 4-2 at 20, 57.

The ALJ cited other evidence to support his conclusion. Nay himself testified that he injured his leg twice on the job, but after all his treatments and despite his persisting pain and complications, he still engaged in "cooking, cleaning, sweeping, mopping, and vacuuming." Doc. 4-2 at 15. He also "worked in his garden during the summer and piddled about in his shop." Doc. 4-2 at 15. And Hunter's May 25, 2008 treatment notes show he "had full range of motion and no real effusion in his left knee and intact distal motor and sensory examinations, despite pain complaints, some mild quadriceps atrophy, and mild crepitus with range of motion. . . ." Doc. 4-2 at 15.

Critical to the ALJ's findings and conclusion was the fact that, even though Nay's knee problems "could reasonably be expected to cause some of his alleged symptoms," doc. 4-2 at 16, nevertheless his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [light work] residual capacity assessment." *Id.* at 16-17. True,

the ALJ noted, the medical evidence shows Nay "experienced exacerbation of left knee pain at times." *Id.* at 17. But Nay's own "extensive activities of daily living, and objective findings on physical examination" supported the finding that his "left knee impairment did *not* preclude work activity within the residual functional capacity assessment."[8] *Id.* at 16.

Nay insists the ALJ erred in rejecting Dr. Hunter's February 10, 2010 "Attending Physician's Statement of Disability." Doc. 6 at 2; doc. 8 at 2-3. Dr. Hunter signed that form on February 21, 2010 but on it disclosed that he had not seen Nay since September 17, 2008. Doc. 8 at 4-5. And Nay's December 31, 2008 DLI made relevant only his condition

---

[8] That assessment was that he could perform light work as defined in 20 CFR 404.1567(b), "which includes individually sitting, standing, walking, pushing and/or pulling for at least 6 horus of 8 hours each 8-hour day." Doc. 4-2 at 16. That regulation states:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

up to that date, not afterwards. *See supra* n. 4; *see also Hughes*, 2012 WL 3124866 at * 2 (discounting physician's post-DLI opinion). Plus the form that Dr. Hunter signed asked him: "is the patient *now* totally disabled?" Doc. 8 at 5 (emphasis added). Hunter checked "Yes" on February 21, 2010, but the last time he saw him was September 17, 2008. That authorized the ALJ to discount his credibility.

Dr. Hunter did write on that form that Nay's "condition is progressive" and he "can not stand for long periods of time," etc. Doc. 8 at 5. Hence, he may be said to be extrapolating. But an extrapolation without a reasonably solid basis for doing so can vitiate the opinion's persuasive power. Dr. Hunter's own July 31, 2008 treatment notes, for example, reported no real swelling, a full range of motion, an intact distal motor and sensory examination, etc. Doc. 4-7 at 38. And, he advised "conservative measures" such as "a prescription for anti-inflammatories and . . . the use of heat, elevation and the avoidance of activities that can cause him discomfort." *Id.* at 37.

All of that supplied sufficient good cause for the ALJ to conclude that Dr. Hunter's extrapolation (that, based on that 2008 medical information, he could opine in 2010 that Nay was disabled) was

unsupported.[9]  The ALJ also fully considered Listing 1.02(A) of 20 C.F.R. Part 404, Subpart P Appendix 1, which notes that a presumptive disability is established if specific medical criteria are established, including a major dysfunction of a joint resulting in an inability to ambulate effectively, as defined in ¶ 1.00(B)(2)(b).   But the relevant medical evidence of record, the ALJ concluded, simply did not show that Nay suffered from that level of knee dysfunction.  Doc. 4-2 at 15.

## III.  CONCLUSION

Because substantial evidence supports the ALJ's determination, *Lewis*, 125 F.3d at 1440; *Keith*, 2012 WL 3111889 at* 5, the Commissioner's denial of benefits should be affirmed and this case should be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED** this 28th day of August, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[9]  Even where the medical record includes objective evidence of pain, and the ALJ acknowledges that the claimant experiences some pain, he may still conclude that the degree of pain is not disabling in light of all the evidence. *Macia*, 829 F.2d at 1011; *Keith v. Astrue*, 2012 WL 3111889 at * 6 (M.D. Ala. Jul. 31, 2012).  Hence, it is not inconsistent to find that a claimant suffers pain yet is not so impaired enough meet the stringent test for disability.  *See Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir.1984); *Wilson v. Astrue*, 602 F.3d 1136, 1145-46 (10th Cir. 2010); *Keith*, 2012 WL 3111889 at * 6.